**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI CENTRAL DIVISION**

| | | |
|---|---|---|
| **FRED KARNES AND JANET KARNES** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:16-CV-04309-MDH** |
| | ) | |
| **HAPPY TRAILS RV PARK, LLC, CAROL A. KUCSIK, and DANIEL R. KUCSIK,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court is Plaintiffs' Motion for Summary Judgment. (Doc. 91). Plaintiffs move for Summary Judgment on the six counterclaims made by Defendants in their Answer to Plaintiffs' First Amended Complaint. (Doc. 39). The Court has carefully considered the motion and related legal arguments. As set forth herein, Plaintiffs' Motion for Summary Judgment is granted in part and denied in part.

## BACKGROUND

Defendants Daniel and Carol Kucsik own Happy Trails RV Park and RV Center. Happy Trails RV Park is adjacent to Interstate 44, about five miles southwest of Lebanon, Missouri. The complex has a lake, a pool, a store, a campground, and facilities for RVs. In 2010, Defendants hired Plaintiffs Fred and Janet Karnes to manage and staff the RV Park. By the terms of the contract, labeled the "Park Manager Agreement," Plaintiffs were jointly paid $385.00 a week in addition to a commission for each campsite rented on a daily or monthly basis. Plaintiffs also received a mobile home in the park with amenities excluding electricity and, starting in 2013, a limited reimbursement for gas fill-ups and 5% of the proceeds of items sold in the store. In

exchange, Plaintiffs agreed to support the park 24 hours a day, 7 days a week, keep store hours appropriate to the season, assist customers, clean the facility maintain the equipment, and perform routine maintenance. In addition, Plaintiffs agreed to "Ensure the cash register is counted, reconciled, and documented on a green sheet each day." Starting in 2013, weekly pay for Plaintiffs increased from $385.00 to $450.00 a week.

Fred and Janet Karnes split work duties in the park. Fred was the maintenance man, responsible for maintaining the appearance and functionality of the park. Janet, by contrast, worked behind the desk in the park store, handling store operations and they money received from customers. During their time at the park, Fred and Janet Karnes admit to undertaking two efforts to generate income that they kept for themselves. First, Janet Karnes sold items of her own making at the store. Second, the Karnes rented their own fishing poles to people who wanted to fish in the pond but were without their own poles, although their experiment was quickly cut short when customers broke the poles. Fred and Stephanie Karnes also rented the apartment above the store to their daughter-in-law, Stephanie Karnes, while she was employed at the park, although it is disputed whether they remitted the rent money to the Kucsiks. Fred and Janet Karnes were responsible for cleaning and maintaining different parts of the park, although they shared the duties of maintaining the pool and cleaning the bathrooms.

Both parties' statements of the facts concerning the maintenance of the park are vague, but it can be adduced that Plaintiffs and Defendants dispute whether the park and its equipment was adequately maintained during Plaintiffs' employment. Plaintiffs allege that it was, while Defendants allege that the bathrooms were dirty, that the pool was not properly winterized, that the mowers were broken, and that the park mobile home was smelly and unclean by the time the Karnes left the park. However rundown the Park's facilities and equipment became during

Plaintiffs' tenure, it operated continuously and was not closed even during its transition to new managers.

The RV Park had a pool that was for the use of paying customers. Plaintiffs claim all money collected from the customers and guests was turned over to Defendants. Plaintiffs contend the practice of charging guests for use of the pool was discontinued in 2010 or 2011, although before that, the existing and agreed-to practice was to allow locals to swim for limited hours for a fee of two or three dollars. Defendants claim that Plaintiffs charged for use of the pool over their entire tenure and kept the money for themselves without their knowledge or authorization.

The business relationship between Dan and Carol Kucsik and Fred and Janet Karnes lasted from 2010 to 2016. New contracts with different compensation schemes but substantively similar terms were signed by the parties in 2013, 2014, 2015, and 2016. In 2016, Plaintiffs initiated this lawsuit, claiming Defendants had violated the Fair Labor Standards Act (FLSA) and the Missouri Wage and Hours Law (MWHL). Plaintiffs claimed they had regularly worked in excess of forty hours per workweek without overtime compensation and that their total hourly compensation fell below the minimums set by the FLSA and MWHL. They also claimed they were not independent contractors but instead employees of Defendants.

Defendants counterclaimed, accusing Plaintiffs of breaching their contract, keeping for themselves sums owed to Defendants, fraudulently misrepresenting themselves, engaging in a conspiracy, and breaching their fiduciary duty. Defendants specifically allege that Plaintiffs did not properly maintain the facilities or equipment in the Park, in violation of the Park Manager Agreement. They allege Plaintiffs charged customers to fish at the pond and swim at the pool and did not deliver those proceeds to Defendants. They allege Plaintiffs sold items in the store and rented RV lots and campgrounds to customers and did not deliver those proceeds to Defendants.

Finally, they allege Plaintiffs rented the apartment above the store and did not deliver the resulting rent payments to Defendants.

Plaintiffs categorically deny each of these claims. There is no documentary evidence in the record that verifies or discredits any of these allegations. Defendants in their counter-complaint rely chiefly on their own deposition testimony and affidavits. Plaintiffs, similarly, rely on their own deposition testimony in their Motion for Summary Judgment.

**STANDARD OF REVIEW**

Summary judgment is proper if, viewing the record in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp., v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986). The moving party is entitled to summary judgment as a matter of law if they can establish there is "no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2510, (1986). Once the moving party has established a properly supported motion for summary judgment, the non-moving party cannot rest on allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Id.* at 248. A question of material fact is not required to be resolved conclusively in favor of the party asserting its existence. Rather, all that is required is sufficient evidence supporting the factual dispute that would require a jury to resolve the differing versions of truth at trial. *Id.* at 248-249.

**DISCUSSION**

Defendants' Answer (Doc. 39) contains six counterclaims: 1) Breach of Contract; 2) Money Had and Received; 3) Fraudulent Misrepresentation; 4) Conspiracy; 5) Breach of Fiduciary Duty; and 6) Punitive Damages on the claims of Fraudulent Misrepresentation and Breach of

Fiduciary Duty. Plaintiffs request summary judgment on each of these claims in their Motion for Summary Judgment. (Doc. 92). The Court will discuss these claims in turn.

**1. Breach of Contract**

Defendants' breach of contract counterclaim has two parts: 1) that Plaintiffs failed to deliver sums to Defendants per the Park Manager Agreement; and 2) that Plaintiffs failed to maintain the Park in adequate condition per the Park Manager Agreement.

**a. Failure to Deliver Sums**

Defendants rely mainly on the deposition and affidavit of Carol Kucsik to support their claim that Plaintiffs did not deliver all sums. In her affidavit, Carol Kucsik states she doesn't believe all the money collected by Defendants was reported on the green sheets or delivered to Defendants. When asked the basis for that belief, she responded in her deposition "visiting with customers." However, upon further questioning it was revealed that she did not talk to any customers herself. Instead it was her husband, Daniel Kucsik, who was the source of this information. Daniel Kucsik in his deposition testimony stated that the source of this information was the park managers that replaced Plaintiffs. No affidavits or deposition testimony from customer or the new park managers were submitted in support of their counterclaim. Defendants also cite to the affidavit of Carol Kucsik, where she states that Plaintiffs' financial reports did not "show or reflect the receipt of funds for charges to customers" for use of the pool after 2011, the pond, or for guests staying with customers. However, she does not state the basis for this belief other than that it was gathered from conversations with unnamed customers and the replacement park managers, relayed to her by her husband. The green sheets and financial reports were not submitted to the Court in support of the counterclaim. Janet Karnes testified that these sums were included in the "miscellaneous" category of the green sheets.

Mr. Kucsik, like his wife, believes Plaintiffs did not deliver sums they were owed under the Agreement. His belief is based solely on what he was told by the replacement park managers, who alleged that Fred and Janet Karnes collected money from customers and did not remit to Defendants. In their deposition testimony, Defendants provide only vague, unspecific, and conclusory statements based on hearsay to support their contention that the Karnes failed to remit money collected from customers and guests using the pool.

Carol Kucsik in her deposition states that Plaintiffs did not deliver sums collected in rent from Janet Karnes' daughter-in-law, Stephanie Karnes, who for a few months lived in an apartment above the camp store while working at the park. Janet Karnes in her deposition states that she did deliver the rent sums to Defendants. There is no documentation in the record that tends discredits or supports either side's flatly contradictory testimony on this matter.

On the issue of breach of contract concerning Plaintiffs' failure to deliver sums to Defendants, the Court will grant Plaintiffs' Motion for Summary Judgment except as to the rent payments of Stephanie Karnes. In support of their allegations that Plaintiffs did not deliver sums gathered from pool customers, from renting fishing poles, and from guests staying with customers, Defendants by their own admission rely not on direct observation but instead solely on hearsay evidence from the statements of anonymous customers and unnamed replacement park managers that would be inadmissible at trial. This evidence is inadmissible hearsay, sometimes including multiple levels of hearsay, and is insufficient foundation upon which to base entry of a judgment in favor of Defendants'. Defendants' statements, even if relied upon, are too imprecise and nebulous to support a breach of contract claim on the issue of sums collected from the pool. On the one topic of which they did have direct knowledge and do make a specific claim as to the breach allegedly committed—the apartment above the store rented by Stephanie Karnes—the

testimony of the parties is flatly contradictory and thus creates a genuine issue of material fact that defeats a summary judgment motion.

The Court notes that the Park Manager Agreements do not specifically provide that Plaintiffs were contractually obligated to deliver rent payments from the apartment to Defendants. However, the apartment is the property of the Defendants, and it is at least possible to read the Park Manager Agreements as creating a contractual duty to remit all money collected from the park facilities, including from the apartment. For this reason, the Court considers there to be a genuine issue of material fact as to whether Plaintiffs were contractually obligated to deliver the collected rent money to Defendants.

**b. Failure to Maintain the Park**

The Park Managers Agreements imposed a duty on Plaintiffs to "Properly maintain all park equipment and perform routine maintenance as needed." Defendants allege Plaintiffs violated this duty by not maintaining the store, bathrooms, and other equipment in the park. Specifically, Dan Kucsik states in his deposition the Park was not "kept as agreed to." He does not, however, identify specifically any equipment that was not maintained or maintenance that was not performed. Carol states in her deposition that the mowers were not maintained, the bathrooms were not maintained, the Park mobile home where the Karnes resided was not maintained, and that the pool was not winterized. Plaintiffs, for their part, deny that any equipment was not maintained.

After careful review of the record, the Court finds a genuine issue of material fact as to whether or not the park was properly maintained. The deposition testimony of the Karnes and Kucsiks on this point is flatly contradictory, and there is no documentary evidence to support or discredit each side's statements. This creates a genuine issue of material fact that is properly

resolved after a credibility determination made by a fact finder at trial. Consequently, the Court will deny summary judgment for Plaintiffs on this issue.

**c. Unconscionability**

Plaintiffs argue as a defense to these Counterclaims that the Agreement is unconscionable. To demonstrate unconscionability in a contract, a party must show both procedural and substantive unconscionability. *Young v. Tri-State Water Treatment, Inc.*, 343 S.W.3d 695, 698 (Mo. App. 2011). Plaintiffs can do neither here.

Procedural unconscionability arises when the contract formation process exerts high pressure on a party in an unequal bargaining position or features other unfair issues in the contract formation. *Whitney v. Alltel Commc'ns, Inc.*, 173 S.W.3d 300, 308 (Mo. App. 2005). Plaintiffs point to the fact that they were unrepresented by counsel to prove they were in an unequal bargaining position. However, the lack of representation during contract formation by itself does not indicate procedural unconscionability. And in the absence of any evidence or allegations indicating unreadable fine print, high-pressure tactics, or attempts to obscure or misrepresent the terms of the contract, the Court considers the record inadequate to support a finding of procedural unconscionability.

Substantive unconscionability arises when there is undue harshness in the terms of the contract. *Young*, 343 S.W.3d at 698 (Mo. App. 2011). Missouri courts have described contracts as substantively unconscionable when "no man in his senses and not under delusion would make, on the one hand, and as no honest and fair man would accept on the other." *Smith v. Kriska*, 113 S.W.3d 293, 298 (Mo. App. 2003). Plaintiffs point to their allegedly low remuneration and the clause of the contract that allowed Defendants to fire them without notice as evidence of substantive unconscionability. This evidence, however, falls far short of what is demanded to

demonstrate real substantive unconscionability. The Court considers there to be a genuine issue of material fact as to whether the contract was unconscionable and accordingly rules against Plaintiffs' Motion for Summary Judgment on this matter.

**2. Money Had and Received**

In Missouri law, an action for Money Had and Received is "appropriate where the defendant received money from the plaintiff under circumstances that in equity and good conscience call for the defendant to pay it to the plaintiff." *Karpierz v. Easley*, 68 S.W.3d 565, 570 (Mo. App. 2002). The elements of the claim are: 1) the defendant obtained possession of the plaintiff's money; 2) the defendant thereby appreciated a benefit; and 3) the defendant's acceptance and retention of the money was unjust. *Ward v. Luck*, 242 S.W.3d 473, 476 (Mo. App. 2008).

The analysis for Plaintiffs' Motion for Summary Judgment for this cause of action is almost identical to the analysis conducted in Section II(1)(A) of this Order. Defendants in their affidavits and deposition testimony make vague and conclusory statements that are supported solely by inadmissible hearsay to support their claims that Plaintiffs charged customers to swim in the pool or rent campgrounds and RV lots and then failed to deliver those sums to Defendants. On the matter of Plaintiffs renting fishing poles to customers, the Court notes that those fishing poles belonged to Plaintiffs, and thus any money obtained by renting them to customers could not justly belong to Defendants. On the matter of Plaintiff Janet Karnes selling her own items in the store, the Court notes that those items belonged to her, and thus absent a specific contractual obligation to remit the proceeds from the sales to Defendants, finds no basis to conclude that money obtained from their sale belongs to Defendants. The Court will grant Plaintiffs' Motion for Summary Judgment on these issues.

On the issue of whether Plaintiffs unjustly rented the apartment to Stephanie and kept the money for themselves, the Court will not grant Plaintiffs' Motion for Summary Judgment. Defendants state that Plaintiffs unjustly kept Stephanie's rent payments for themselves. Plaintiffs flatly deny the same. On its own review of the record, the Court finds that it would be possible for a fact finder to determine that these rent payments were not delivered to Defendants but instead unjustly obtained and appreciated by Plaintiffs. In lieu of any documentation or further evidence in the record on the matter, the Court finds a genuine issue of material fact exists on this issue.

**3. Fraudulent Misrepresentation**

Defendants allege that Plaintiffs represented through the terms of their contract with Defendants that Plaintiffs were delivering all sums paid by Defendants customers and accounting for all such sums. In Missouri, the elements of fraud are: 1) a materially false representation; 2) the speaker's knowledge of its falsity; 3) the speaker's intent that it should be acted on by the counterparty in a way reasonably contemplated; 4) the hearer's ignorance of the statement's falsity and reliance on the statement's veracity; and 5) the hearer's consequent and proximately caused injury. *Sofka v. Thal*, 662 S.W.2d 502, 506 (Mo. Banc 1983). The claim will fail if any of these elements are not established. *Dolan v. Rabenberg*, 231 S.W.2d 150 (Mo banc. 1950).

Plaintiffs assert that there is no evidence they ever made any false statements to Defendants. Defendants, to create a genuine issue of material fact on this count, allege that Plaintiffs "made a representation to RV Park each day they delivered monies to RV Park that purported to be all of the sums collected from the RV Park's customers." To support this, they point solely to the deposition testimony of Fred and Janet Karnes. However, nowhere in this testimony do Plaintiffs purport to have delivered *all* of the money collected from customers to Defendants. The statements pointed to by Defendants only establish that in 2010 and 2011 they

would fill out the green sheet and deliver the deposit bag to Defendants on a daily basis—not that the delivered sums represented the full amount of money collected from customers. Statements made in a deposition after the fact cannot be the basis of a claim for fraud which requires reliance on the false representation at the time of the alleged fraud to be actionable. Defendants proffer no other evidence of false representations or acts in reliance on those representations on the part of Plaintiffs. Because there is no genuine issue of material fact as to whether Plaintiffs made actionable and materially false representations to Defendants, the Court grants summary judgment to Plaintiffs on the claim of fraudulent misrepresentation. Most importantly, as pointed out above, there is no admissible non-hearsay evidence to support the contention that Plaintiffs failed to deliver sums to Defendants with the possible exception of a couple of months' rent from an apartment. The agreement does not make the obligation to remit money received from an employee of the park sufficiently clear to support a claim of fraud.

**4. Breach of Fiduciary Duty**

Defendants allege that Plaintiffs, by virtue of the Park Management Agreement, owed a fiduciary duty to Defendants and breached that duty by breaching their contract, failing to deliver sums owed to Defendants, and by misrepresenting their conduct to Defendants. A breach of fiduciary duty can only be established when 1) a fiduciary duty between the parties existed; 2) the defending party breached the duty; and 3) the claimant suffered harm because of the breach. *Preferred Physicians Mut. Mgmt. Group v. Preferred Physicians Mut. Risk Retention*, 918 S.W.2d 805, 810 (Mo. App. 1996). An agent is a fiduciary to his master with respect to matters within the scope of his agency. *State ex rel. Bunting v. Koehr*, 865 S.W.2d 351, 353 (Mo. Banc 1993). A person acting as a fiduciary has a duty to act in the best interest of the other party. *Sutherland v. Sutherland*, 348 S.W.3d 84, 91-92 (Mo. App. 2011).

Defendants' breach of fiduciary duty claim rests on the same factual allegations that support their other claims. Defendants allege a fiduciary duty existed "by virtue of the contract[.]" The Park Manager Agreement does not explicitly designate the Plaintiffs as agents. Nonetheless, Plaintiffs did agree to manage the RV Park, and arguably did in fact operate as agents of the owners when accomplishing this task. The Court holds there is at least a genuine issue of material fact as to whether Plaintiffs owed a fiduciary duty to Defendants.

However, the Defendants must also establish that Plaintiffs breached that duty. Only two claims have survived Plaintiffs' motion for summary judgment: (1) a breach of the contract claim for failing to maintain equipment and deliver rent sums; and (2) a money had and received claim for failing to deliver rent sums. Plaintiffs' failure to adequately maintain the park's equipment, even if established, could not constitute a breach of their fiduciary duty. It is, at most, a contractual obligation. Likewise, their failure to deliver rent sums to Defendants, given the vagueness of the contract, could not constitute a breach of their fiduciary duty. The scope of Plaintiffs' fiduciary duty, if later established, would only extend to delivering to Defendants the money collected from the customers of the RV Park and acting in their best interest as it pertains to the management of the park. Stephanie Karnes was an employee, not a customer, of the park. Nothing in the record suggests that Plaintiffs' duties included being a landlord of the apartment above the store. Accordingly, the Court finds that Plaintiffs' actions as they pertain to the apartment above the store fall outside the scope of their fiduciary duty. On this basis, the Court will find that there is no genuine issue of material fact as to whether Plaintiffs breached their fiduciary duty and will grant their motion for summary judgment on this issue.

**5. Conspiracy**

Defendants allege that Plaintiffs conspired to breach their contract, to take money belonging to Defendants and retain the benefit thereof, and to fraudulently mislead the Defendants. In Missouri, a claim for civil conspiracy requires: 1) two or more persons; 2) to have an unlawful objective; 3) after a meeting of the minds; 4) and to commit at least one act of furtherance of the objective; 5) resulting in damage to the other party. *Gibson v. Brewer*, 952 S.W.2d 239, 245 (Mo. Banc 1997). A conspiracy claim must rest upon an underlying tort. *Williams v. Mercantile Bank of St. Louis*, 845 S.W.2d 78, 85 (Mo. App. 1993).

Defendants' conspiracy claim rests on the same factual allegations that support their other claims. The Court has already found a genuine issue of material fact existed as to whether Plaintiffs committed a tort by not delivering rent collected from the apartment to Defendants. However, Defendants must still show a genuine issue of material fact exists as to whether Plaintiffs possessed an unlawful objective and had a meeting of the minds. On its own review of the record, the Court notes that there is no evidence in the record that Plaintiffs possessed an unlawful objective. Even if it is later established that they committed a tort by not delivering rent sums, this failure would be properly understood as the result of a flawed understanding of the contract, not as the result of a purposeful decision to act unlawfully. Furthermore, there is no evidence establishing that Fred and Janet Karnes plotted to not deliver rent sums to Defendants. Indeed, nothing in the record indicates that Fred Karnes had any knowledge that Stephanie Karnes paid any rent at all. Because the Court does not consider there to a genuine issue of material fact as to the existence of an unlawful objective or to a meeting of the minds, it will grant Plaintiffs' motion for summary judgment on this issue.

**6. Punitive Damages**

Defendants allege that Plaintiffs' fraudulent misrepresentations merit punitive damages. Because the Court granted summary judgment to Plaintiffs on this claim, Defendants' request for a punitive damages award is denied.

Defendants also allege that Plaintiffs' breach of fiduciary duty merits punitive damages. A submissible case for punitive damages requires clear and convincing proof that the defendant intentionally acted wantonly or outrageously, or with reckless disregard for the act's consequences, from which evil is inferred. *Howard v. City of Kansas City*, 332 S.W.3d 772, 788 (Mo. banc 2011). Plaintiffs' alleged failures to deliver rent sums and maintain part equipment do not, standing by themselves, create an inference of evil motive and reckless indifference, and Defendant cites to no specific part of the record to evince the Plaintiffs' evil motive.

Instead, Defendants' argues that Plaintiffs' "consistent and repeated misappropriation creates an inference of evil motive and reckless indifference . . ." After careful review of the record, including the deposition testimony of Plaintiffs, the Court disagrees. The record in this case does not establish that "consistent and repeated misappropriation" ever took place. And to the extent that the record could support a later finding of limited misappropriation or neglect, even the least charitable interpretation of Plaintiffs' actions would not genuinely put into issue the question of whether they acted wantonly, outrageously, or with an evil motive. Consequently, the Court will deny Plaintiffs' Motion for Summary Judgment on this issue.

**CONCLUSION**

For the reasons set forth herein, the Court hereby **GRANTS** Plaintiffs' Motion for Summary Judgment as to Defendants' counterclaims for:

a. Breach of Contract as to Plaintiffs' failure to deliver all sums collected from Defendants' customers

b. Money Had and Received, excepting rent payments by Stephanie Karnes

c. Breach of Fiduciary Duty

d. Conspiracy

e. Fraudulent Misrepresentation

f. Punitive Damages

The Court hereby **DENIES** Plaintiffs' Motion for Summary Judgment as to Defendants' counterclaims for:

a. Breach of Contract as to Plaintiffs' failure to maintain park facilities and equipment and failure to delivers rent payments from Stephanie Karnes

b. Money Had and Received as to rent payments by Stephanie Karnes

**IT IS SO ORDERED.**

Dated: January 8, 2019

*/s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**